UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FIDEL ARTEAGA HERNANDEZ,

           Petitioner,

       v.

PAMELA BONDI, et al.,

           Respondents.

No. 1:26-cv-00486-TLN-SCR

**ORDER**

This matter is before the Court on Petitioner Fidel Arteaga Heranndez's ("Petitioner") motion for injunctive relief.[1] (ECF No. 2.)  Respondents Pamela Bondi, Todd Lyons, Kristi Noem, Sergio Albarran, and Tonya Andrews ("Respondents") filed an opposition.  (ECF No. 12.) For the reasons set forth below, Petitioner's motion is GRANTED, and the Court issues a preliminary injunction as described below.

///

///

///

---

[1] On January 25, 2026, Petitioner filed a Motion for a Temporary Restraining Order and Preliminary Injunction.  (ECF No. 7.)  In opposition, Respondents indicated no objection to the Court's consideration of Petitioner's motion as one for a preliminary injunction.  (ECF No. 12 at 1 n.1)

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Mexico.  (ECF No. 1 at 5.)  Petitioner first entered the United States without inspection in 2001.  (*Id.*)  On or about September 11, 2005, immigration authorities detained Petitioner, issued an expedited order of removal and removed him from the United States to Mexico.  (*Id.* at 6.)  On February 5, 2009, Petitioner reentered the United States and was removed on February 24, 2009.  (*Id.*)  At some time thereafter, Petitioner reentered the United States.  (*Id.*)  On September 28, 2021, immigration officials detained Petitioner.  (*Id.*)

On November 23, 2021, an immigration court found that Petitioner established a reasonable possibility of persecution or torture in Mexico and referred Petitioner to withholding-only proceedings.  (ECF No. 1-4 at 2.)  On March 10, 2022, an immigration court granted withholding of removal, concluding Petitioner had suffered past persecution and faced a clear probability of future torture in Mexico.  (ECF No. 1 at 6.)  The Department of Homeland Security ("DHS") appealed the court's order granting withholding of removal, and on August 22, 2022, the Board of Immigration Appeals ("BIA") dismissed the appeal and affirmed the court's decision. (*Id.*)  Petitioner remained in immigration custody throughout the duration of his withholding only proceedings — September 28, 2021 through at least August 22, 2022.  (*Id.*)

Following the BIA's dismissal of DHS's appeal, Petitioner was released from immigration custody and placed on supervision.  (*Id.* at 7.)  While Petitioner was on release, Petitioner resided in Maryland, complied with all reporting requirements, and maintained valid work authorization. (*Id.*)  Petitioner lived with his lawful permanent resident partner and is a father to his partner's U.S. Citizen daughter and his own U.S. Citizen daughter, who rely on Petitioner for consistent financial, emotional and parental support.  (*Id.*)

On October 16, 2025, Petitioner was detained during a routine check-in.  (*Id.*)  On October 23, 2025, Petitioner was transferred to Golden State Annex in McFarland, California.  (*Id.*)  On January 20, 2026, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)  On January 23, 2026, Petitioner filed the instant motion for injunctive relief.  (ECF No. 7.)

## II.     STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established: "[1] that

he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction. *Id.* at 1134–35.

### III.   ANALYSIS

#### A.   Likelihood of Success on the Merits

Petitioner argues: (1) Immigration and Customs Enforcement ("ICE") unlawfully revoked his release when it failed to follow its own regulations; (2) his continued detention violates due process because his removal is not reasonably foreseeable as required under *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) DHS has not initiated or completed the statutory sequence and procedural requirements necessary to lawfully designate a third county of removal under § 1231(b). (ECF No. 1.) The Court addresses the likelihood of success for each claim.

#### i.   Due Process for Revocation of Release

Respondents have the authority to detain non-citizens with final orders of removal to effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas*, 533 U.S. at 697. But when a non-citizen has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the non-citizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l) ("ICE Regulations"). These procedures protect important due process rights owed to non-

citizens.[2] *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). "Where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid." *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations were followed . . . [petitioner's] re-detainment was unlawful.").

Petitioner's revocation of release was governed by 8 C.F.R § 241.13(i). (*See* ECF Nos. 1 at 15.) In considering Petitioner's claim that Respondents failed to comply with ICE Regulations thereby violating due process, the Court assesses 8 C.F.R § 241.13(i)(2) (determination requirements) and 8 C.F.R § 241.13(i)(3) (procedures) in turn.

> a)   *Determination to Revoke Release Under 8 C.F.R. § 241.13(i)(2)*

Under the ICE Regulations governing revocation of release, ICE may re-detain non-citizens "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The "on account of" language means that the "changed circumstances" are a prerequisite to revocation. *Id.*; *see also Tran v. Noem*, No. 25-cv-2391, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) ("§ 241.13(i)(2) requires that this determination is made *before* the removable [non-citizen] has had his release revoked.") (emphasis added). "Significant

---

[2]    It is fundamental that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–598 & n.5 (1953); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, (1886); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

4

likelihood" requires something more than a mere possibility. *See Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025).

The burden is on ICE to first establish changed circumstances that make removal significantly likely. *See Vu*, 2025 WL 3114341, at *7; *see also Escalante v. Noem*, No. 9:25-cv-00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on [a non-citizen] each time he is re-detained would lead to an unjust result and serious due process implications.").

Respondents do not address this requirement. (*See generally* ECF No. 12.)  Neither have Respondents identified any event or fact to infer that Petitioner's circumstances changed between his release in 2021 and the revocation in 2025.  Without any facts to rely on, this Court must find that there were no changed circumstances in Petitioner's case to warrant the revocation of his release under ICE Regulations.  8 C.F.R. § 241.13(i)(2).  Thus, ICE improperly revoked Petitioner's release.

Respondents also failed to meet its burden to show that Petitioner's deportation is significantly likely in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(2) (showing required under ICE Regulations to properly revoke release).  Petitioner contends he was granted withholding of removal, so it cannot be significantly likely that he will be removed there.  (ECF No. 1 at 2.)  The Court cannot glean any basis from Respondent's brief or evidence to support the likelihood of removal.

In sum, ICE did not make the requisite sufficient showing that Petitioner's removal was significantly likely in the foreseeable future based on changed circumstances at the time it revoked his release under 8 C.F.R. § 241.13(i)(2).  Accordingly, the Court finds that ICE improperly revoked Petitioner's release in violation of its own regulations and due process.

        *b)*    *Procedures to Revoke Release Under 8 C.F.R. § 241.13(i)(3)*

The ICE Regulations also lay out procedures for revocation of release.  8 C.F.R. § 241.13(i)(3).  ICE must provide notice to the non-citizen of the reasons for revocation, "conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the [non-citizen] an opportunity to respond to the reasons for revocation[,]" and provide review of the

determination.  *Id.*

Petitioner alleges that ICE did not follow these procedures.  (ECF No. 1 at 14–17.)  Respondents do not address whether ICE complied with its regulations.  Thus, on the facts currently before this Court, Petitioner is likely to succeed on the merits of his claim that ICE also failed to follow 8 C.F.R. § 241.13(i)(3) for the revocation of his release.

*ii.   Due Process for Continued Detention*

Petitioner further argues that his continued detention is unlawful because he has been in custody for a total of 11.5 months since his final order of removal and his removal is not reasonably foreseeable as required under *Zadvydas*.  (ECF No. 1 at 9–12 (citing 533 U.S. 678).)  Respondents do not address Petitioner's argument.

In *Zadvydas*, the Supreme Court considered prolonged immigration detention after a final order of removal.  533 U.S. 678 (2001).  Although the Government has statutory authority to detain non-citizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  The Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal.  *Id.* at 701.  "After this 6–month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*

The *Zadvydas* presumptive period "does not reset when the government detains [a non-citizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again."  *Sied v. Nielsen*, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *see also Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.").

Here, Respondents have detained Petitioner for a total of 328 days since his final order of

6

removal, well beyond six months. Thus, they have lost the benefit of the *Zadvydas* presumption. This Court has found there is no significant likelihood of removal in the reasonably foreseeable future, therefore, Petitioner has met his burden. As a result, Respondents must produce evidence rebutting Petitioner's showing for his continued detention to be lawful. *See Zadvydas*, 533 U.S. at 701. However, Respondents provide no evidence that removal is reasonably foreseeable. Thus, the Court finds that Petitioner's removal is not reasonably foreseeable and his continued detention is unlawful.

### i.  Third-Country Removal

Third-country removals involve deportation to countries that are not identified in a final removal order and to which the non-citizen has no connection. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). ICE's July 9, 2025 guidance on this issue provides that if the United States has received credible diplomatic assurances from a target third country that the non-citizen will not be persecuted or tortured, then they may be removed "*without the need for further procedures*." *Vu*, 2025 WL 3114341, at *8 (quoting ICE July 9, 2025 third-party removal policy) (emphasis added). Where diplomatic assurances are not secured, ICE will provide notice to the non-citizen, but removal could occur within as little as six hours and ICE "will *not* affirmatively ask whether the [non-citizen] is afraid of being removed to the country of removal." *Id.* If ICE follows this policy for Petitioner's removal, he would have no meaningful opportunity to seek relief in any court before he is removed to a third country. *See id*.

Numerous courts in this Circuit have held that ICE's third-country removal policy is unconstitutional and this Court agrees with those well-reasoned decisions. *See, e.g.*, *Vu*, 2025 WL 3114341, at *9; *Scott*, 2025 WL 2419288, at *18–23; *Zakzouk v. Becerra*, No. 25-cv-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process."

*Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."  *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).  Thus, Petitioner is likely to succeed on the merits of his third-country removal claim.

B.  Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of injunctive relief.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner is detained and has been separated from his community.  Even if this was not sufficient to establish irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

C.  Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). The public also has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]"  *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.")

As discussed above, Petitioner has shown he is likely to succeed in proving that Respondents have violated federal laws depriving him of his constitutional rights and his liberty. Additionally, Respondents are not harmed by their sworn duty to follow the law. *See Zepeda*, 753 F.2d at 727.  Thus, the balance of equities and public interest factors weigh in Petitioner's favor.

Therefore, the Court issues a preliminary injunction.

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's motion, (ECF No. 7), considered as a motion for preliminary injunctive relief, is GRANTED.

2.  Petitioner Fidel Arteaga Hernandez shall be RELEASED IMMEDIATELY from Respondents' custody. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner Fidel Arteaga Hernandez until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

4.  Respondents are ENJOINED AND RESTRAINED from removing Petitioner Fidel Arteaga Hernandez to any country other than Mexico, unless they provide the following process:

    a.  written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand;

    b.  following the notice, Petitioner must be provided a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for protection under the Convention Against Torture prior to removal;

    c.  if Petitioner is found to have demonstrated "reasonable fear" of removal to the designated country, Respondents must move to reopen Petitioner's immigration proceedings;

     d.  if Petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, Respondents must afford Petitioner a meaningful opportunity, and a minimum of fifteen days, to seek to reopen his immigration proceedings.

5.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

6.  This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 30, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE